UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRI SMITH,

            Plaintiff

V.

CITY OF LAKELAND, FLORIDA and
LAKELAND POLICE DEPARTMENT,

            Defendants

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL
## INJUNCTIVE RELIEF SOUGHT

1.     Plaintiff Terri Smith, a former police sergeant in Defendants' employ, brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*; the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §623, *et seq*.; and the Florida Civil Rights Act (Fla.CRA) of 1992, Florida Statutes, Chapter 760 for relief from discrimination and harassment based on her sex and age, and for retaliation for her protected activity in opposition to such discrimination, which ended her 24-year career as a law enforcement officer with the Defendants.

### Jurisdiction

2.     Jurisdiction of Plaintiff's federal claims is conferred by 28 U.S.C. §§1331 and 1343(3), as well as 42 U.S.C. §2000e-5 (Title VII) and 29 U.S.C. § 626 (ADEA).  Supplemental jurisdiction of Plaintiff's state law claims is conferred by 28 U.S.C. §1367, as Plaintiff's state and federal claims arise out of a common nucleus of operative fact, as more fully set

forth below.

## Parties

3.   Plaintiff TERRI SMITH is a is a 64-year-old female American citizen and a resident of Lakeland, Polk County, Florida.

4.   Defendant CITY OF LAKELAND was Plaintiffs' employer and has its offices and operations in Lakeland, Polk County, Florida.  Defendant is a "person" engaged in an industry affecting interstate commerce and having more than 15 employees at all times relevant to the claims herein, and as such is an "employer" within the meaning of 42 U.S.C. §2000e(a), 29 U.S.C. §630(b) and Section 760.02, Florida Statutes.

5.   Defendant LAKELAND POLICE DEPARTMENT was Plaintiffs' employer and has its offices and operations in Lakeland, Polk County, Florida.  Defendant is a "person" engaged in an industry affecting interstate commerce and having more than 15 employees at all times relevant to the claims herein, and as such is an "employer" within the meaning of 42 U.S.C. §2000e(a), 29 U.S.C. §630(b) and Section 760.02, Florida Statutes.

## Statement of Facts

6.   Plaintiff Terri Smith (hereinafter, Smith) began employment with Defendants as a sworn police officer of the Lakeland Police Department (hereinafter, LPD) on April 17, 1995. She was promoted to the rank of Sergeant on December 29, 2002.

7.   In 2004 she was tasked with creating and operating a new Crime Analysis Unit.  After she did so, she was placed in charge of the unit and supervised the four employees assigned to it.

8.     In January of 2017, LPD hired a 26-year-old male, Sean Patterson, to an entry level position work in the Crime Analysis Unit.  In that position he reported to Smith, and Smith assigned her most experienced Crime Analyst, Brenda Wallace, to mentor and train him.  At the time, Wallace was over 40 years of age.

9.     Shortly after his arrival, Patterson began to complain about his job assignments, refused to complete assigned tasks, and resisted efforts by Wallace and Smith to supervise him. He spend hours of his time away from his work station, without notifying Smith, complaining to male staff members, including Smith's superior officers, Lieutenant Steven Sealey and Captain Hans Lehman, about Wallace and Smith.

10.    In June of 2017 Smith asked Sealey to support her in her supervisor role by making it clear to Patterson that he was responsible for following her instructions and being accountable to her as his supervisor.  Sealey met with Smith and Patterson together on June 2, 2017.  At the meeting Patterson verbally attacked Smith, stating that he had complained to "higher ups" in the LPD that she was resisting needed change in the unit, and that the "higher ups" agreed with him.  He accused Smith of "running off" a male former crime analyst.  Smith asked Patterson to leave the room so that she could speak with Lt. Sealey, but Patterson refused to do so until so instructed by Lt. Sealey.

11.    After Patterson left the room, Smith asked Sealey why she had allowed Patterson to go on and had not admonished him for insubordination.  Sealey responded that Smith was being "defensive" and he did not believe Patterson had been insubordinate, and that his own interactions with Patterson had been very positive, "like a father talking to his son."

3

12.     As the supervisor of the Crime Analysis Unit, it fell to Smith to do the performance evaluations of her staff.  On January 5, 2018, she completed Patterson's evaluation, and rated his work performance ast Standard Performance, noting strengths and weaknesses, and identifying areas in need of improvement, including his practice of being late with assignments and circumventing his mentor and his supervisor.  About this time she also completed her evaluation of Wallace, whom she gave high marks for excellent performance.

13.     Shortly thereafter, Captain Lehman informed Smith that Patterson's evaluation was too low, and Wallace's too high, and that he would have to "write a memo" if she did not reduce Wallace's rating.  Smith responded that Wallace was an experienced, high-performing member of the unit and that her rating was accurate.

14.     On January 11, 2018 Captain Lehman summoned Smith to a meeting with himself, Assistant Chief Mike Link, and Lieutenant Sealey.  Lehman handed Smith an eight-page, single-spaced memorandum, which was entitled Clarification of Employee Evaluations by Sgt. Smith and was addressed to Sealey and Link.  Smith then attempted to skim the the memo in the silent presence of the three male superior officers.  The memo admonished Smith for not giving Patterson a higher evaluation, stating that there was a "generational conflict occurring that cannot be resolved" between Patterson and Smith, referring to Patterson as a "young" employee with a "refreshing" approach, while referring to Smith as "stuck in her ways."  It went on to state that "our young employees need

members that will embrace them." Smith was intimidated but explained her actions and declined to change the evaluations.

15. Shortly thereafter, Lehman gave a copy of the memo to Patterson, thereby undermining any authority that Smith had over his supervision. Patterson then filed an internal complaint of age discrimination against Smith. When that was unsuccessful, he filed a Charge of Discrimination with the EEOC, but it was dismissed after investigation.

16. On February 7, 2018 Sealey issued Charging Party's annual performance evaluation, rating her at the level of 4.76 on a scale of 1.00 to 7.00, lower than she have ever been rated in her position and in particular lower than the previous year's rating of 6.72. The evaluation document made frequent references to Smioth's allegedly overly critical management of Patterson.

17. On February 8, 2018 Smith filed with the Defendant City of Lakeland's Human Resources Department a complaint of hostile work environment based on her age and gender. Among the perpetrators she identified in the complaint were Sealey and Lehman. Charging Party requested that during the pendency of the investigation, she not be required to report to Lt. Sealey and Captain Lehman, but that request was denied.

18. Sealey then began to keep a written record of Smith's comings and goings, including her attendance, daily arrival and departure times, time spent at medical appointments and other activities. The records also included notes of Sealey's phone calls to doctor's offices to confirm times of her appointments, and of oral and written requests to LPD staff members to confirm that Smith had attended meetings and other events listed in her time

records.  Next to each entry was Sealey's notation as to the Department policy which he believed Smith's conduct may have violated.

19.   Although he remained Smith's supervisor, he refused to speak to her after she filed the Human Resources complaint.

20.   On June 28, 2018 Captain Sam Taylor, who performed the internal LPD investigation of Smith's hostile work environment complaint, issued a report recommending that all of those named be "exonerated."

21.   On July 28, 2018 Sealey e-mailed his 29-page log of Smith's activities and alleged offenses to 35 LPD employees, including non-supervisory employees, members of the Crime Analysis Unit and other employees with whom she had to work.  This humiliated Smith and made her the subject of ridicule at the LPD.

22.   Smith complained to LPD Chief Larry Giddens, who told her that Sealey had sent the e-mail attaching his notes "by mistake" and had attempted to delete it.  However, members of her unit told Smith that they had received the e-mail but had not received any notice that it had been withdrawn or sent by mistake.  Sealey never apologized, never claimed to Smith that the e-mail had been sent in error, and never discussed the matter with her in any way.

23.   After this, Smith was overwhelmed with humiliation and asked Chief Giddens to assign her to another supervisor.  Giddens refused.  He told Smith she could accept a demotion to patrol duty or apply for any open position just like any other employee.

24.   On July 30, 2018 Smith's undersigned attorney wrote to Giddens, outlining the course of

the harassment and bullying by Sealey and others, and requesting that Smith be assigned to a different supervisor. When no corrective action was forthcoming, counsel wrote to then-City Attorney for Defendant City of Lakeland, Tim McCausland, again requesting that Smith be reassigned to a different chain of command.

25. When no corrective action was taken, Smith concluded that she could no longer tolerate this hostile work environment. Even though she was approaching 25 years' service which would have resulted in increased pension benefits, she terminated her employment on October 15, 2018.

Malice and Reckless Disregard

26. In subjecting Plaintiff Smith to a hostile work environment and retaliated against her as described above, Defendants acted with malice and with reckless disregard for her federally protected rights, and her rights under state law.

Count One – Title VII

27. Paragraphs 3-26 are incorporated by reference as if fully set forth herein.

28. On or about September 17, 2018 Smith filed a Charge of Discrimination with the EEOC against Defendant Lakeland Police Department. After investigation, the EEOC on August 20, 2019 issued a Letter of Determination, finding reasonable cause to believe that Defendant subjected Smith to a hostile work environment because of her age and sex, and constructively discharged her because of her age and sex, and in retaliation for her protected activity.

29. After attempts at conciliation failed, the EEOC issued a Notice of Suit Rights on October

9, 2019.

30.     Based on the foregoing, Defendants subjected Smith to a hostile work environment, discriminated against her in terms, conditions and privileges of employment and constructively discharged her because of her sex, and in retaliation for her protected activity, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e-2(a) and 3(a).

31.     Based on the foregoing, Defendant retaliated against Plaintiff because of her protected activity in opposition to discrimination, including participation in the EEOC charge-filing process, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3(a).

        WHEREFORE, Plaintiff prays that this Court enter an order:

(a) Enjoining Defendant from discriminating in the future on the basis of an employee's sex or her protected activity;

(b)  Requiring Defendant to reinstate Plaintiff at the level which he would have attained absent discrimination;

c) Awarding back pay and other economic damages to Plaintiff;

(d) Awarding compensatory damages for the emotional pain, suffering and humiliation caused by Defendant's acts of discrimination against Plaintiff;

(e)  Awarding Plaintiff her reasonable attorney fees and costs of this action; and

(f)  Awarding such other relief as this Court deems appropriate.

## Count Two – Age Discrimination in Employment Act

32.     Paragraphs 3-30 are incorporated by reference as if fully set forth herein.

8

33.     Based on the foregoing, Defendant subjected Smith to a hostile work environment, discriminated against her in terms, conditions and privileges of employment and constructively discharged her because of her age, and in retaliation for her protected activity, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §623.

WHEREFORE, Plaintiff prays that this Court enter an order:

(a) Enjoining Defendant from discriminating in the future on the basis of an employee's age  or her protected activity;

(b)  Requiring Defendant to reinstate Plaintiff at the level which he would have attained absent discrimination;

c) Awarding back pay and other economic damages to Plaintiff;

(d) Awarding compensatory damages for the emotional pain, suffering and humiliation caused by Defendant's acts of discrimination against Plaintiff;

(e) Awarding plaintiff liquidated damages for Defendant's wilful violation of the ADEA;

(f)  Awarding Plaintiff her reasonable attorney fees and costs of this action; and

(g)  Awarding such other relief as this Court deems appropriate.

## Count Three– Florida Civil Rights Act

34.     Paragraphs 3-30 are incorporated by reference as if fully set forth herein.

35.     On or about September 17, 2018 Smith filed a Charge of Discrimination with the EEOC, which in turn forwarded a copy of her charge, at her request, to the Florida Commission on Human Relations (FCHR).  Plaintiff's Charge of Discrimination has been pending with the FCHR for more than 180 days, but said Commission has issued no determination

thereon.

36.    Based on the foregoing, Defendants subjected Smith to a hostile work environment, discriminated against her in terms, conditions and privileges of employment and constructively discharged her because of her age and sex, and in retaliation for her protected activity, in violation of the Fla. CRA, Sections 760.10(1)(a) and 760.10(7).

WHEREFORE, Plaintiff prays that this Court enter an order:

(a) Enjoining Defendant from discriminating in the future on the basis of an employee's sex , age, or her protected activity;

(b)  Requiring Defendant to reinstate Plaintiff at the level which he would have attained absent discrimination;

c) Awarding back pay and other economic damages to Plaintiff;

(d) Awarding compensatory damages for the emotional pain, suffering and humiliation caused by Defendant's acts of discrimination against Plaintiff;

(e)  Awarding Plaintiff her reasonable attorney fees and costs of this action; and

(f)  Awarding such other relief as this Court deems appropriate.

<u>Demand for Jury Trial</u>

Plaintiff hereby demands a trial by jury on all issues so triable in this action.

Respectfully submitted,


    s/ Peter F. Helwig
Peter F. Helwig
Trial Counsel for Plaintiff

10

Florida Bar No. 0588113
Harris & Helwig, P.A.
6700 South Florida Avenue, Suite 31
Lakeland, FL  33813
Telephone:  (863) 648-2958
Facsimile:  (863) 619-8901
Email: pfhelwig@tampbay.rr.com

**ATTORNEY FOR PLAINTIFF**

Dated at Lakeland, Florida this 7th day of January, 2020.